## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**A2Z DENTAL, LLC,**                )
                        **Plaintiff,**    )          **CIVIL ACTION**
                                    )          **NO.  4:19-40068-TSH**
**v.**                              )
                                    )
**MIRI TRADING, LLC d/b/a POLAROID**  )
**DENTAL IMAGING**                  )
                                    )
                        **Defendant.**    )
_____ )


<u>**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES (Docket Nos. 52 and 54)**</u>

**October 2, 2020**

**HILLMAN, D.J.,**

A2Z Dental, LLC ( "A2Z") filed the instant action against Miri Trading, LLC ("Miri") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent representation, mutual mistake/equitable reformation, unilateral mistake, and violations of M.G.L. c. 93A. § 11 (Docket No. 1).  After Miri failed to file a timely answer to A2Z's complaint, the Court entered default judgement against Miri and denied Miri's subsequent request to set aside the default. (Docket Nos. 9, 10, 11).

The Judgment found that, among other offenses, Miri had violated 93A by failing to disclose during negotiations with A2Z that 19 of the 36 dental sensors it was selling would come with temporary software licenses (the rest were never delivered), rather than the permanent software licenses that Miri had provided with the first four sensors it sold to A2Z.  (Docket No. 44, ¶¶ 63-67).  I did not award damages under 93A or for negligent representation because A2Z had not provided any evidence of damages stemming from the temporary software licenses, such

as the cost that A2Z paid to obtain permanent licenses or replace the sensors with temporary licenses. (Docket No. 44, ¶ 68).  Instead, I awarded A2Z $96,017 on its breach of contract and breach of the implied covenant of good faith and fair dealing claims. That amount included $55,675 that A2Z paid to Miri for undelivered sensors and the $40,342 difference in price A2Z paid to a third-party to replace the undelivered sensors. (Docket No. 44 at 12-13).  I also awarded A2Z $3,708 for Miri's intentional evasion of service of process under Fed. R. Civ. P. 4(d).  (*Id.*).

Following the Court's Entry of Judgment, A2Z filed a Motion for Attorneys' Fees under M.G.L. c. 91A §§ 2, 11 and Fed. R. Civ. P. 54(d).  (Docket Nos. 44, 46).  On July 22, 2020, I denied the Motion for Attorneys' Fees without prejudice to renew upon a more detailed explanation and breakdown of the proposed costs and fees attributable to the successful portion of their 93A claim. (Docket No. 50).

My Order did not set a deadline for A2Z to renew its motion for attorneys' fees, but on September 4, 2020, Miri asked the Court to deny the request for fees and close the case, which A2Z opposed. (Docket Nos. 53, 54).  On September 8, 2020, A2Z filed this renewed Motion for Attorneys' Fees. (Docket No. 55).  A2Z seeks $24,039.00 in fees and $694.78 in costs for the law firm of BourgeoisWhite, LLP, as well as $5,574.38 in fees and costs for Attorney Stephen J. Chaplin.

## Discussion

### 1.  *Miri's Motion to Deny Plaintiff's Request for Attorney Fees and Costs with Prejudice and Close Case.*

Miri argues that Plaintiff's renewed Motion for Attorney's Fees must be denied as untimely. (Docket No. 52).  My Order granting A2Z leave to renew their Motion did not contain a deadline and Miri has not stated how the six-week delay would prejudice it. (Docket No. 50). Therefore, Miri's Motion to Deny Plaintiff's Request for Attorney Fees and Costs is denied.

2. *A2Z's Renewed Motion for Attorneys' Fees and Costs.*

Miri objects to A2Z's renewed motion on three grounds: (1) that A2Z cannot recover 93A

attorney fees where 93A damages were not awarded; (2) that even if attorney fees were allowed

by law, A2Z has not provided sufficiently detailed records of the legal work performed to recover

its fees; and (3) that 28 U.S.C. § 1920 precludes A2Z's recovery of any costs beyond the complaint

filing fee.

a.   Availability of Attorneys' Fees.

Miri correctly points out that the Court entered judgment for A2Z on the c. 93A § 11 claim

but did not award damages because A2Z did not provide evidence to substantiate the extent of the

injury caused by receiving the sensors with the temporary software licenses.  (Docket No. 44 at

12-13).

Attorney fees are allowed for 93A § 11 claims even when the court does not award

damages.  To be sure, a § 11 plaintiff "cannot recover attorney's fees for merely identifying an

unfair or deceptive act or practice." *Jet Line Services, Inc. v. American Employers Insur. Co.*, 404

Mass. 706, 718 (Mass. 1989).  Nonetheless, a § 11 plaintiff who can show that an unfair or

deceptive practice has had "some adverse effect" on them may recover attorneys' fees, even if that

adverse effect "*is not quantifiable in dollars*." *Id.* (emphasis added).

Courts applying the *Jet Line* adverse effect test have construed "adverse effect" broadly.

In *NASCO, Inc. v. Public Storage, Inc.*, the First Circuit held that a business which contracted to

sell a warehouse, and which prevailed on its 93A claim against the buyer without proving damages,

was entitled to attorneys' fees. 127 F. 3d 148, 149-50 (1st Cir. 1997).  NASCO's purported adverse

effect was that it had incurred legal fees for work performed in anticipation of the sale closing, and

utility fees to reactivate the warehouse's electricity at the purchaser's request. *Id*. NASCO never paid the legal or electric bills, but the Court reasoned that the bills alone were sufficient adverse effects to justify attorney's fees because they "worsened NASCO's position and put it at risk of suit." *Id*. at 154. *See also RFF Family Partnership, LP v. Link Development*, *LLC*, 2015 WL 1472253 (Mar. 31, 2015 D. Mass.) (finding that nominal damages of $1 and adverse effects supported awarding attorneys' fees to § 11 plaintiff); *Shapiro v. Public Serv. Mut. Ins. Co.*, 19 Mass.App.Ct. 648, 657-660 (Mass. App. Ct. 1985) (insured not entitled to damages on Consumer Protection Act claim was nonetheless entitled to attorney fees because he established that the insurer committed an unfair act) (discussed with approval in *Jet Line*, rejected on other grounds by *Lumbermens Mut. Cas. Co. v. Belleville Industries, Inc.*, 407 Mass. 675 (Mass. 1990)). While *Jet Line*'s reasoning has been called into question by *Kiely v. Teradyne*, which held that a finding of retaliation alone, without any form of relief or recovery, cannot support an award of attorneys' fees in employment discrimination cases brought under G.L. c. 151B § 9, *Jet Line* remains good law for 93A § 11 claims. 85 Mass.App.Ct. 431, 447-49 (Mass. App. Ct. 2014).

The adverse effects that A2Z incurred as a result of Miri's unfair acts are more tangible and direct than what passed judicial muster in *NASCO*. Miri sold A2Z 4 dental sensors that were inoperable without permanent software licenses, which Miri included at no additional charge. (Docket No. 44, ¶¶ 7, 14). Satisfied with the initial 4 sensors, Miri contracted to sell A2Z 36 additional sensors. (¶ 9). Unlike the first 4 sensors, the next 19 sensors Miri delivered came with temporary software licenses. (¶ 16). As a result, they ceased operating after 30 days, resulting in a total loss of A2Z's $68,075 investment. (¶ 19). Such an adverse effect supports an award of attorneys' fees under *Jet Line*.

b.   Amount of Attorneys' Fees.

A2Z is entitled to the reasonable costs and attorneys' fees it incurred in connection with its action. Mass. G.L. c. 93A § 11.  The fee amount falls within the Court's discretion, and ultimately focuses on the objective worth of counsel's services.  *Berman v. Linnane*, 434 Mass. 301, 302-03 (Mass. 2001).  To determine what is reasonable, the court "should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases."  *Linthicum v. Archambault*, 379 Mass. 381, 388-89 (1979).  The prevailing party must "submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work."  *Twin Fires v. Morgan Stanley Dean Witter*, 445 Mass. 411, 428 (2005).

93A fee awards should be limited to the fees incurred in connection with the plaintiff's 93A claims, unless the plaintiff's other claims are "largely predicated on identical facts, and thus the legal effort to establish the two classes of claims was virtually the same."  *Twin Fires* at 1138. A2Z's 93A claims, its common-law contract and misrepresentation claims, and its equitable claims are all based on the negotiation and execution of a single agreement between Miri and A2Z for the purchase of 36 dental sensors, so strict apportionment of the expenses is not required.  Nonetheless, the Court must deduct the approximate amount of fees for "items wholly unrelated" to proving the 93A claims. *Incase, Inc. v. Timex Corp.*, 421 F.Supp. 2d 226, 244 (D. Mass. 2006).  Keeping the *Linthicum* factors in mind, the Court begins its analysis.

This was a straightforward case which did not present any new or complex questions of law and should not have taken substantial time or labor to litigate.  Motions practice was limited,

especially considering that Miri's failure to file responsive pleadings resulted in a default judgment against it.  In addition to drafting the 93A demand letter and Complaint, A2Z's attorneys sought a default judgment, responded to Miri's motions to set aside the Court's default and motion to dismiss for lack of jurisdiction, submitted proposed findings of fact for the Court's judgment, and prepared for and participated in a damages hearing on May 1, 2020. (Docket No. 19). They successfully established Miri's liability for breach of contract, breach of the covenant of good faith and fair dealing, negligent representation, and under 93A, and recovered $96,017 in damages for their client.

However, that success is mitigated by the fact that the Court found Miri liable but could not award A2Z damages for the negligent representation or 93A claims.  In short, A2Z could have recovered more damages if its counsel had provided the Court with more information about the injury Miri caused by sending A2Z 19 sensors equipped with temporary software licenses. Because the results obtained were not as favorable as they could have been, I apply a 20% global reduction.

The contemporaneous time records submitted by both BourgeoisWhite and Stephen Chaplin are also somewhat lacking.  The billing rates identified for the paralegal, associate, and partner-level legal work for BourgeoisWhite and Attorney Chaplin are customary for the region. (Docket No. 54-1, ¶ 2; 54-2, ¶ 3).  However, the Court questions why a senior partner of thirty years' experience at BourgeoisWhite with a higher billing rate performed basic legal work that would typically fall to an associate, such as legal research and drafting a complaint.  This is especially true in a non-complex case when the records show that an associate performed similar tasks at a later stage in the same matter such as telephone calls with opposing counsel, preparing opposition

to a motion to dismiss, and writing proposed findings of fact and rulings of law.  Accordingly, the Court applies a further 15% deduction to BourgeoisWhite's fee.

Attorney Chaplin's submission fails to state his level of experience beyond his status as an associate at Doherty, Dugan, Cannon, Raymond & Wiel, P.C., and some of his work after BourgeoisWhite was hired as co-counsel in April 2019 appears to be duplicative of that firm's efforts.  Several of Attorney Chaplin's longer time entries are block-billed or vague, such as this entry from May 8, 2020 for 2.9 hours, or $942: "Review draft proposed findings and fact and rulings of law [prepared by BourgeoisWhite]; telephone conference with client and in-house counsel regarding same; draft and send multiple email memoranda to litigation counsel [BourgeoisWhite]; telephone conference with client and litigation counsel regarding same." (Docket No. 54-1 at 14). The lack of detail about the subject of the memoranda or telephone conferences, or notations about how long Attorney Chaplin spent on each task, makes it more difficult for the Court to evaluate the value of his contribution when assessing his fee request.

Attorney Chaplin drafted the 93A demand letter and continued to review work and consult with A2Z throughout the case, but he did not appear before the Court beyond submitting his affidavit for attorneys' fees.  Much of his later work seems to have been reviewing drafts of other attorneys' court filings that the Court presumes had already been reviewed by the billing partner at BourgeoisWhite, who, so far as is evident from the filing, had decades more legal experience. Accordingly, the Court applies an additional 15% deduction to his fee.

c.  Expenses.

BourgeoisWhite, LLP did not provide an itemized list or summary of their purported $694.78 of expenses.  By combing through their submitted billing records in Exhibit A, it appears that the firm is seeking compensation for the $400 cost of filing the complaint, as well as

approximately two dozen entries summarily labelled "Computer based legal research" and "Telephone/facsimile charge" totaling $294.78.  (Docket No. 54-1).

Federal law and the Rules of Civil Procedure set out allowable taxable costs in civil cases, which may include filing fees, fees and disbursements for printing and witnesses, and fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d).  Miri concedes that the $400 filing fee falls within the statute, but objects to the charges for computer based legal research and telephone/facsimile charges.

Because e-research services like WestLaw and Lexis are now "as much part of legal service as a lawyer's taxi to the courthouse," I find no reason to exclude BourgeoisWhite LLP's legal research costs, though the attorneys should have described the subject of their research. *InvesSys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16, 22-23 (1st Cir. 2004).  As the First Circuit has observed, there is no "taint of double billing" in charging separately for Westlaw or LexisNexis research because it is "common practice" for law firms to track research costs by matter and bill clients directly for those costs. *Id*. at 23.  Given that A2Z prosecuted multiple claims and drafted several pleadings, $217.78 in research costs is not an unreasonable sum.

BourgeoisWhite also seeks $77 in unexplained "Telephone/facsmile charge[s]."  Because there is no accompanying description of what was copied, transmitted, printed, or communicated, how, and for what purpose, the Court cannot say whether these costs are allowed under 28 U.S.C. § 1920 or Fed. R. Civ. P. 54(d), or instead "are properly considered the overhead associated with running a law firm" that should be "included in the hourly rates paid to the attorney." *Conservation Law Found., Inc. v. Patrick*, 767 F.Supp.2d, 259 (D. Mass. 2011); *Full Spectrum Software, Inc. v. Forte Automation Systems, Inc.*, 125 F.Supp.3d 301, 306 (D. Mass 2015); *Conservation Law*

*Found., Inc. v. Patrick*, 767 F.Supp.2d, 259 (D. Mass. 2011); *Full Spectrum Software, Inc. v. Forte Automation Systems, Inc.*, 125 F.Supp.3d 301, 306 (D. Mass 2015).  Therefore, the Court does not allow these expenses.

The Court allows Attorney Chaplin's $4.50 request for postage.


### Conclusion

A2Z's Motion for Attorney's Fees and Costs is granted in part and denied in part. The Court awards a total sum of $19,468 in fees and costs.


**SO ORDERED.**

*/s/ TIMOTHY S. HILLMAN*
**DISTRICT JUDGE**